DECISION AND JUDGMENT ENTRY
{¶ 1} This case involves a judgment rendered in favor of an injured worker who filed a negligence action against the owner of the construction project. Alan B. Evans appeals the trial court's decision to apply the amended version of R.C. 1343.03, the prejudgment interest statute, rather than the version that was in effect at the time he filed his complaint. The Dayton Power and Light Company ("DPL") cross-appeals the court's award of prejudgment interest, arguing that the court abused its discretion by making the award because Evans did not prove that DPL failed to make a good faith effort to settle the case and that he did not fail to make a good faith effort to settle the case.
 {¶ 2} We conclude the court's finding that DPL did not make a good faith effort to settle, on the purported basis that it failed to fully cooperate in discovery proceedings, is unreasonable. The record reveals that Evans filed status reports with the court indicating that DPL was fully complying with discovery. And, Evans failed to demonstrate that two documents that DPL allegedly failed to provide him had any bearing on his ability to settle his claims. The court's determination that DPL failed to rationally evaluate its risks and potential liability is also unreasonable. In reaching its decision that it had no liability, DPL clearly considered: (1) the relevant statutory/case law, and (2) documented facts, which it identified through discovery and its own investigation. Thus, it conducted a rational evaluation of its risk and potential liability. The court failed to consider these factors and instead relied on the fact that DPL's analysis ultimately proved to be incorrect. The proper inquiry was whether DPL had an objectively reasonable basis to believe it had no liability. Because DPL had such a belief, it was not required to respond to Evans' settlement offers.
 {¶ 3} Since the award of prejudgment interest was unreasonable, we reverse the judgment. Evans' assignment of error is moot based on our disposition of DPL's cross-assignment of error.
 I. CASE HISTORY {¶ 4} In March 1995, Evans suffered serious injuries when he fell from a catwalk while working at a power plant operated by DPL. Evans, a pipefitter, worked for Enerfab Corporation ("Enerfab"), an independent contractor hired by DPL to perform maintenance work at the plant. In March 1997, Evans filed suit against DPL, alleging its negligence caused his injuries. Evans voluntarily dismissed this action in June 2000 but refiled the suit a year later.
 {¶ 5} In June 2002, the case went to a jury trial. The jury returned a verdict in Evans' favor, awarded damages totaling $1,104,215.44, and found that Evans was 27% at fault. Thus, the court entered judgment in the amount of $806,077.27 in Evans' favor. Evans filed a motion for prejudgment interest, which the trial court granted.
 {¶ 6} DPL appealed the trial court's denial of various motions that are not relevant here and the court's award of prejudgment interest to Evans. We reversed solely on the award of prejudgment interest after finding that the court applied the wrong legal standard in making the award. We remanded the issue of prejudgment interest to the trial court for reconsideration.Evans v. Dayton Power and Light Co., Adams App. No. 03CA763, 2004-Ohio-2183 ("Evans I").[1]
 {¶ 7} On remand, the court again awarded prejudgment interest to Evans after determining that a revised version of the prejudgment interest statute applied. This significantly reduced the amount of interest Evans can collect. Therefore, both parties appealed the court's judgment.
 {¶ 8} Evans assigns the following error:
The Common Pleas Court erred in applying the amended version of Ohio's prejudgment interest statute, R.C. § 1343.03(C) effective June 2, 2004, retrospectively to this case, which was pending on appeal as of the effective date, to limit the period of time and the portion of the underlying judgment for which Plaintiff has a right to recover prejudgment interest.
 {¶ 9} DPL assigns this error on cross-appeal:
The trial court erred when it granted Evans' motion for prejudgment interest.
Because we find it to be dispositive, we consider DPL's cross-appeal first.
 II. PREJUDGMENT INTEREST A. Principles And Standards {¶ 10} R.C. 1343.03(C) controls the award of prejudgment interest in tort cases. The legislature enacted R.C. 1343.03(C) to prevent parties who have engaged in tortious conduct from frivolously delaying the ultimate resolution of cases and to encourage good faith efforts to settle controversies outside a trial setting. Kalain v. Smith (1986), 25 Ohio St.3d 157, 159,495 N.E.2d 572, 574. The statute also serves the additional purpose of compensating a plaintiff for the defendant's use of money that rightfully belonged to the plaintiff. Musisca v.Massillon Community Hosp., 69 Ohio St.3d 673, 676, 1994-Ohio-451, 635 N.E.2d 358, 360.
 {¶ 11} A plaintiff is entitled to prejudgment interest under R.C. 1343.03(C) when four conditions exist.[2] First, the party seeking interest must petition the court by a motion filed after judgment and no later than fourteen days after entry of judgment. Second, the court must hold a hearing. Third, the court must find that the party required to pay the judgment failed to make a good faith effort to settle. And finally, the court must find that the party to whom the judgment is to be paid did not fail to make a good faith effort to settle the case. Moskovitzv. Mt. Sinai Med. Ctr., 69 Ohio St.3d 638, 658, 1994-Ohio-324,635 N.E.2d 331; R.C. 1343.03(C). If a party meets the four statutory requirements, the decision to allow prejudgment interest is not discretionary. Moskovitz at 658.
 {¶ 12} The party seeking prejudgment interest bears the burden of proof. Moskovitz at 658. Although the court must award prejudgment interest if the moving party establishes the four requirements of R.C. 1343.03(C), the decision as to whether a party's settlement efforts indicate good faith is generally within the sound discretion of the trial court. Moskovitz at 658; Kalain at 159, 495 N.E.2d 572. Absent a clear abuse of discretion, we will not reverse the trial court's finding on the issue. Kalain at 159, 495 N.E.2d 572. Abuse of discretion is an attitude on the part of the trial court that is unreasonable, arbitrary or unconscionable. Huffman v. Hair Surgeon, Inc.
(1985), 19 Ohio St.3d 83, 87, 482 N.E.2d 1248.
 {¶ 13} DPL concedes that the first two requirements of R.C.1343.03(C) are satisfied but argues that the trial court abused its discretion in finding that it failed to make a good faith effort and that Evans did not fail to make a good faith effort to settle the case. The Ohio Supreme Court has held that a party has not "failed to make a good faith effort to settle" under R.C.1343.03(C) if it has: (1) fully cooperated in discovery proceedings; (2) rationally evaluated its risks and potential liability; (3) not attempted to unnecessarily delay any of the proceedings; and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. But, when a party has a good faith, objectively reasonable belief that it has no liability, it need not make a monetary settlement offer. Kalain v. Smith (1986), 25 Ohio St.3d 157,495 N.E.2d 572, at syllabus. In sum, a party may have "failed to make a good faith effort to settle" even when its conduct does not arise to the level of bad faith. Id. at 159, citing Mills v. Dayton
(1985), 21 Ohio App.3d 208, 486 N.E.2d 1209.
 {¶ 14} A party must satisfy all four of the Kalain requirements — noncompliance with even one factor indicates that the party has failed to make a good faith effort to settle. See, e.g., Wagner v. Marietta Area HealthCare, Inc., Washington App. No. 00CA17, 2001-Ohio-2424 (affirming award of prejudgment interest when defendant cooperated in discovery and did not attempt to delay proceedings, but court found she did not rationally evaluate the risks and potential for liability or possess a good faith, objectively reasonable belief that she had no liability); Myres v. Stucke (Oct. 29, 1999), Trumbull App. No. 98-T-0132 (trial court erred by denying prejudgment interest when it concluded that the defendant failed to properly evaluate his risks and potential liability).
 {¶ 15} In considering a request for prejudgment interest, the trial court is not limited to considering the evidence presented at the prejudgment interest hearing. The court may also review the evidence presented at trial and its prior rulings and jury instructions, especially when considering such factors as the type of case, the injuries involved, applicable law, and the available defenses. Galmish v. Cicchini, 90 Ohio St.3d 22, 27, 2000-Ohio-7, 734 N.E.2d 782.
 {¶ 16} Here, the trial court found that Evans' claimed damages were $75,000 in medical damages, $1.4 million in future earnings, and $195,000 in lost wages. Prior to trial, Evans made a settlement demand of $900,000, which he later reduced to $650,000 and then to $400,000. DPL had "reserves" of $200,000 and its insurer, Miami Valley Insurance Company ("MVIC"), set its excess reserves for $250,000. These reserves represented the "worst case scenario" for DPL. The court found that despite the reserve amounts and counsel's recommendation that DPL increase its settlement offer to $120,000, DPL never offered Evans more than $75,000 to settle the case. Further, DPL was aware that Evans would reject the $75,000 offer, but believed Evans had nothing more than a "nuisance claim." DPL's senior in-house counsel believed this was a non-liability case. The court also noted that DPL lost two motions for summary judgment and a motion for a directed verdict.
 {¶ 17} The court concluded that DPL failed to make a good faith effort to settle Evans' claims by failing to fully cooperate in discovery and withholding documents requested by Evans, and by failing to make a good faith settlement offer and instead treating the case as a nuisance case. The court also found that DPL "failed to correctly analyze this case as a non-liability case." The court determined that Evans did not fail to make a good faith settlement offer as he cooperated in discovery, did not delay the proceedings, made a good faith monetary settlement offer, and did not delay in preparing for trial.
 B. DPL'S Good Faith Efforts {¶ 18} We examine each of the Kalain factors to determine whether the trial court abused its discretion by concluding that DPL failed to make a good faith effort to settle.
 1. Failure to Cooperate in Discovery {¶ 19} The trial court found that DPL failed to fully cooperate in discovery and withheld documents requested by Evans. The court does not specify which documents it is referring to, but Evans contends that DPL failed to produce an "Alliance Agreement" between it and Enerfab, and a copy of an accident investigation report. Therefore, we assume these are the documents the court found DPL withheld.
 {¶ 20} The "Alliance Agreement" outlined how both DPL and Enerfab would financially benefit from the completion of Enerfab's work before schedule. According to Evans, he first learned of this Agreement during a deposition on March 19, 2002 and requested a copy of the document from DPL at the deposition and again in a letter dated April 9, 2002. Evans asserts that he never received a response from DPL and obtained the document prior to trial through Enerfab. Evans contends that the accident investigation report, which was prepared by a DPL employee and evaluated the loss severity potential for the accident as "major," was not provided to him until after judgment.
 {¶ 21} DPL argues the status reports Evans filed on April 12 and May 26, 2002, belie his claim that DPL was not cooperating in discovery proceedings. In both of those reports, dated after the deposition and letter requesting the Agreement, Evans stated that DPL was fully cooperating in discovery. DPL also argues that it provided Evans with a copy of the investigation report and Evans actually used that report at a deposition prior to trial.
 {¶ 22} Although the Ohio Supreme Court has not defined "full cooperation in discovery," at least one appellate court has determined that "[t]he crux of [a] court's inquiry when examining cooperation in discovery is to assure that the parties were not deprived of information necessary to make a well-informed decision with respect to settlement." Allied Erecting andDismantling Co., Inc. v. City of Youngstown, Mahoning App. No. 03MA179, 2004-Ohio-3665, citing Watson v. Grant Med. Ctr.,123 Ohio Misc.2d 40, 2003-Ohio-2704, 789 N.E.2d 1175, at ¶ 39. Because the goal of R.C. 1343.03(C) is to promote settlement, we agree that this is an appropriate standard to follow.
 {¶ 23} In addition to the fact that Evans filed status reports indicating that DPL was fully complying with discovery, it is significant Evans never filed any motions to compel discovery. Minor discovery disputes between parties are routine and small disagreements do not demonstrate that a party failed to cooperate in discovery for purposes of awarding prejudgment interest. Cf. Bisler v. Del Vecchio (July 1, 1999), Cuyahoga App. No. 74300 (defendant failed to cooperate in discovery proceedings when plaintiffs were forced to file a motion to compel). Given the longevity and complicated issues involved in this case, there were apparently surprisingly few discovery disputes.
 {¶ 24} Most importantly, Evans filed a status report with the court three days after he wrote a letter requesting the "Alliance Agreement" from defense counsel but never mentioned that any discovery requests were still outstanding. This report undermines Evans' later claim that DPL failed to fully cooperate in discovery. And, Evans never demonstrated that he could not make a well-informed decision as to settlement due to any alleged delay in his receipt of either of these documents. Evans apparently learned of the existence and contents of the "Alliance Agreement" in March 2002 and received a copy of the document shortly thereafter. Moreover, Evans apparently obtained at least a version of the accident report well before the settlement negotiations between the parties.
 {¶ 25} Evans also argues that DPL failed to fully cooperate with discovery by providing evasive and inconsistent interrogatory answers regarding the location of the gaskets DPL was required to provide to Enerfab. DPL contends that its answers distinguish between gasket materials, which it possessed at the time of Evans' fall, and pre-made gaskets, which DPL intended to order once Enerfab indicated that it needed the gaskets to complete its work. Having reviewed the interrogatory answers, we see little or no inconsistencies or evasiveness in DPL's answers; they are consistent with the evidence DPL presented at trial regarding the location of the gaskets and gasket materials.
 {¶ 26} We conclude that the trial court's finding that DPL failed to fully cooperate in discovery is not supported by the evidence and, therefore, is unreasonable. Other than Evans' post-trial claims that DPL failed to provide two documents, which are refuted by the record, there is no evidence that DPL failed to fully cooperate in discovery.
 2. Rational Evaluation of Risks and Potential Liability {¶ 27} DPL contends that it rationally evaluated its risks and potential liability and determined that this was a "non-liability" case. DPL's liability hinged upon whether it had "actively participated" in the work Evans performed for Enerfab so that it owed him a duty of care. DPL theorized that it had not "actively participated" in Evans' work because it had not supervised his actions or instructed him or Enerfab as to how to perform the job. DPL also believed that Evans' failure to wear protective fall gear was an intervening cause of his injuries and that the jury would find Evans at least 50% liable for his own injuries.
 {¶ 28} Although the court did not explicitly find that DPL failed to rationally evaluate this case, it did conclude that DPL treated this as a "nuisance case" and "failed to correctly analyze this case as a non-liability case." The court also noted that DPL lost two summary judgment motions and a motion for directed verdict.
 {¶ 29} In evaluating its risk of liability, a party must examine both the likelihood of the event occurring, i.e. its probability, and its impact if it should happen, i.e. its magnitude. Wagner v. Marietta Area Health Care, Inc.,
Washington App. No. 00CA17, 2001-Ohio-2424. Here, DPL presented evidence that it rationally considered both the likelihood of being found liable for Evans' injuries and the potential impact of a liability finding.
 {¶ 30} Timothy Rice, DPL's in-house counsel, testified that he reviewed Sopkovich v. Ohio Edison Co., 81 Ohio St.3d 628,1998-Ohio-341, 693 N.E.2d 233, the Ohio Supreme Court decision addressing the duty of care building owners owe to employees of independent contractors, as well as precedent from this Court applying Sopkovich. He also examined the facts of this case and determined that DPL had a strong defense to Evans' allegations. Rice also met with DPL's outside counsel at various times during the pendency of the action to discuss the case.
 {¶ 31} Paul Cynkar, DPL's claims adjuster, testified that he too believed this was a "non-liability" case. Cynkar attended or reviewed several of the depositions and attended at least part of the trial and observed nothing that changed his mind. Cynkar testified that, although he is not an attorney, he reviewed the case law regarding "active participation" and concluded that DPL did not actively participate in Enerfab's work. Cynkar testified that he believed this was a "non-liability" case because DPL employees did not tell Enerfab employees how to perform their work and Cynkar believed that DPL's provision of the gaskets to Enerfab was a minor issue.
 {¶ 32} Evans contends that Cynkar overly relied upon his initial investigation in determining that DPL had no liability for the accident and that he ignored newer evidence establishing DPL's liability. However, Cynkar testified that he kept abreast of the case, but no new information affected his analysis. Therefore, it is apparent that Cynkar did consider the new evidence as it was discovered, it just did not change his opinion.
 {¶ 33} Evans also argues that Rice ignored or was unaware of several facts that were unfavorable to DPL when he determined that DPL was not liable for Evans' injuries. For example, Evans criticizes Rice for not being aware that Danny Farmer testified at deposition that DPL employees and supervisors were involved in the discussions concerning how the job was going to be performed or that Enerfab supervisors were told to notify a DPL supervisor if they needed anything for the job. Most of these facts, however, have no bearing on DPL's liability. As we held in Evans I, Evans produced no evidence that DPL instructed Enerfab about how to perform the job even though it was involved in some discussions concerning how the work was being performed. These actions could not constitute "active participation" underSopkovich and its progeny. Although Rice was unaware of some details of the case, it is unrealistic to expect an in-house counsel to read every deposition and be aware of every aspect of a case. Rice testified that he knew the most significant points and it is clear that DPL's outside counsel, who was intimately familiar with all the facts, also believed DPL was not liable for Evans' injuries under existing case law.
 {¶ 34} Evans also contends that in deciding it had no liability, DPL misinterpreted Sopkovich and its progeny because it ignored the fact that DPL controlled a critical variable — the gaskets that the Enerfab employees needed to safely complete their work. Therefore, Evans concludes DPL's evaluation of its risk of loss was not rational.
 {¶ 35} In Evans I, we affirmed the court's denial of DPL's motions for directed verdicts after finding that there was enough evidence for a reasonable jury to conclude that the gaskets were a critical variable and that their absence caused Evans' injuries. The bulk of this evidence was the testimony of Evans' co-workers who indicated that they had never performed the coil installation job the way it was being performed at DPL, i.e., without the gaskets being bolted into place — and that this procedure was unsafe. They also testified that the job was being performed in this manner because DPL did not have the needed gaskets at the plant. Our ratification of the trial court's decision to allow the matter to proceed to the jury should not be misconstrued. It cannot be interpreted to mean anyone who believed DPL was free from liability was acting irrationally. It simply reflects the low threshold a plaintiff must meet to allow a jury to decide the ultimate issue.
 {¶ 36} Having read the entire trial transcript, we recognize that there was substantial evidence to support DPL's position that the gaskets were not critical to Enerfab's completion of its work and that the job was being performed without the gaskets solely based on the decision of Enerfab supervisors. In fact, the Enerfab supervisor in charge of the job testified that he informed a DPL representative that he did not yet need the gaskets and that the job was being performed without the gaskets in order to use labor resources more efficiently, not because DPL failed to provide the gaskets in a timely manner. And, a DPL representative testified that he could have had the gaskets at the plant within one to two days of ordering them and was merely waiting for the go-ahead from Enerfab. Additionally, even some of Evans' co-workers acknowledged that the job could have been safely performed even without the gaskets in place. Presumably, DPL relied on this testimony when it concluded that the gaskets were not a critical variable and that they were only a minor issue in the case. We cannot say that this conclusion was irrational.
 {¶ 37} Evans criticizes DPL for interpreting the case law incorrectly and misapplying the case law to the facts in this case. However, the facts of this case do not mirror those from our prior cases, other appellate courts or the Supreme Court of Ohio. We are aware of no case law that is so "on point" with the facts here that, based on its holding, a reasonable person could only conclude DPL was liable. Therefore, DPL's determination that the law would be resolved in its favor was not irrational. While it may have been prudent to err on the side of caution, it was not irrational for DPL to conclude they did not actively participate in the work.
 {¶ 38} DPL also presented evidence that its interpretation of the case law was consistent with that of some of the attorneys Evans contacted to represent him. After dismissing his initial complaint, Evans had a difficult time retaining local counsel. At least one attorney expressly declined to take the case because he had concerns regarding the likelihood of Evans' recovery and Evans' out-of-state counsel informed him that he couldn't find an Ohio attorney interested in the case because "they do not believe you have a cause of action under Ohio law." Moreover, Evans' attorney told him shortly before trial that the "recommended settlement value [would] not reap a lot of expendable sums."
 {¶ 39} We agree with DPL that the trial court placed undue weight on the fact that it had denied two summary judgment motions and a motion for a directed verdict. In order to survive these motions, the non-moving party need only produce some evidence to support its claims. During settlement negotiations after the denials of the summary judgment motions, DPL recognized that there was some evidence supporting Evans' claims but believed that the weight of the evidence was heavily in its favor. Given that the supervisors at both Enerfab and DPL agreed that DPL was following Enerfab's instructions regarding the provision of the gaskets, this belief was not irrational.
 {¶ 40} The court also placed undue weight on the fact that DPL "failed to correctly analyze this case as a non-liability case." Obviously, DPL's conclusions regarding its lack of liability were incorrect. However, if the standard were merely whether a defendant's analysis of liability was correct, prejudgment interest would be awarded whenever a jury finds a defendant liable. Although the jury and the trial court disagreed with DPL's evaluation, that does not mean DPL acted irrationally when making it. See, e.g., Holman v. GrandviewHosp. Med. Ctr. (1987), 37 Ohio App.3d 151, 159,524 N.E.2d 903, 911-912, and Walworth v. BP Oil Co. (1996),112 Ohio App.3d 340, 354, 678 N.E.2d 959, 969 ("adverse jury verdict standing alone is not proof of irrational evaluation"). Instead, the court should have considered whether, despite its erroneous conclusion, DPL had an objectively reasonable basis for its belief that it had no liability. We see no evidence that the court made this analysis.
 {¶ 41} DPL also presented evidence that it weighed the magnitude of a loss at trial in evaluating whether to settle the case. Counsel informed DPL that he believed Evans had "no legitimate claim," but that a settlement offer would "hedge against the risk of a sympathy verdict by a result-oriented jury." He opined that a plaintiff's verdict would not be near $1 million and that Evans' "home run" verdict would be between $400,000 and $650,000. He also noted that the trial court had referred to a $160,000 verdict as a "healthy verdict" in Adams County.
 {¶ 42} Cynkar testified that he set DPL's "reserve" at $200,000, and MVIC set its "reserve" at $200,000 or $250,000. Cynkar testified that the "reserve" reflects DPL's exposure prior to its insurance company becoming involved. Because DPL had a $200,000 deductible[3] and Evans had extensive injuries, DPL's potential exposure was $200,000.
 {¶ 43} It is apparent that DPL and its counsel underestimated the amount a jury would award in this case. However, their analysis was not totally unreasonable. The record reveals that counsel considered at least one prior jury award as well as DPL's prior cases in Adams County and the facts and circumstances of this case in evaluating the magnitude of a potential loss. And, DPL apparently believed that their liability exposure in this case was so low that, even given the large loss potential, their risk was minimal.
 {¶ 44} Based on the evidence clearly establishing that DPL rationally evaluated its risk of liability and its potential losses, we conclude that the trial court abused its discretion by finding otherwise. It would be an injustice to penalize a defendant for exercising its right to trial, especially when there is substantial evidence supporting its claim that it is not liable for a plaintiff's injuries. See Avondet v. Blankstein
(1997), 118 Ohio App.3d 357, 370, 692 N.E.2d 1063. Although DPL's analysis of the case was ultimately proven wrong, there is considerable evidence that DPL's analysis was rational. The trial court failed to consider whether DPL had an objectively reasonable belief for its determination that this was a "non-liability" case under the facts and existing case law. The mere fact that DPL's evaluation was ultimately proven wrong does not mean that it was irrational. Therefore, we conclude that the trial court's determination that DPL failed to rationally evaluate its risk of liability is unreasonable.
 3. Unnecessarily Delay the Proceedings {¶ 45} The trial court did not find and Evans does not argue that DPL unnecessarily delayed the proceedings.
 4. Failed to Make an Offer or Respond to an Offer {¶ 46} Finally, the trial court found that DPL failed to make a good faith effort to settle this case. The court noted that DPL set the "reserve" for this case at $200,000 and its insurer set its "reserve" at $250,000. Yet, DPL never offered more than $75,000 to settle the case. The court also noted that Evans suffered substantial losses and that defense counsel recommended that DPL incrementally increase its settlement offer to $120,000, but DPL failed to follow counsel's recommendation.
 {¶ 47} However, a party is not required to make or respond to a settlement offer if it has a good faith, objectively reasonable belief that it has no liability. Kalain at syllabus. We have already determined that DPL had such a belief. Therefore, it was not required to engage in settlement discussions. So, even assuming the $75,000 offer was not made in good faith, it is irrelevant.
 {¶ 48} Because DPL made a good faith effort to settle this case, we need not consider whether Evans failed to make a good faith effort to settle. Accordingly, we sustain DPL's cross-assignment of error and reverse the trial court's award of prejudgment interest in Evans' favor. Appellant's assignment of error is moot.
JUDGMENT REVERSED AND CAUSE REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED AND CAUSE REMANDED and that Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. McFarland, J. Concur in Judgment and Opinion.
[1] Because Evans I contains a full recitation of the facts, we will not repeat the evidence presented here.
[2] R.C. 1343.03(C)(1) states:
If, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case, interest on the judgment, decree, or order shall be computed * * *.
[3] Rice testified that the $200,000 amount was not actually a deductible. Rather, DPL was self-insured for up to $200,000.