[Cite as *Simon v. Larreategui*, 2022-Ohio-1881.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY**

| | | |
|---|---|---|
| NICOLETTE SIMON, et al. | : | |
| | : | |
| Plaintiffs-Appellees | : | Appellate Case No. 2021-CA-41 |
| | : | |
| v. | : | Trial Court Case No. 2018-CV-443 |
| | : | |
| PATRICK A. LARREATEGUI, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of June, 2022.

. . . . . . . . . .

TODD B. NAYLOR, Atty. Reg. No. 0068388, 4445 Lake Forest Drive, Suite 490, Cincinnati, Ohio 45242 & MARC G. PERA, Atty. Reg. No. 0069231, 1095 Nimitzview Drive, Suite 403, Cincinnati, Ohio 45230 & JOHN D. HOLSCHUH, Atty. Reg. No. 0019327, 600 Vine Street, Suite 2700, Cincinnati, Ohio 45202
     Attorneys for Plaintiffs-Appellees

BENJAMIN C. SASSE, Atty. Reg. No. 0072856, SUSAN M. AUDEY, Atty. Reg. No. 0062818, & ELISABETH A. ARKO, Atty. Reg. No. 0095895, 950 Main Avenue, Suite 1100, Cleveland, Ohio 44113

MICHAEL P. FOLEY, Atty. Reg. No. 0061227, JEFFREY M. HINES, Atty. Reg. No. 0070485, JAMES J. ENGLERT, Atty. Reg. No. 0051217, 600 Vine Street, Suite 2650, Cincinnati, Ohio 45202
     Attorneys for Defendant-Appellant Ethicon Endo-Surgery, Inc.

. . . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Ethicon Endo-Surgery, Inc. ("Ethicon") appeals from a judgment of the Miami County Court of Common Pleas which, after an eight-day jury trial on the tort claims of Plaintiffs-Appellees Nicolette and Steven Simon, imposed the jury's verdict against Ethicon, denied Ethicon's motion for judgment notwithstanding the verdict, and then awarded prejudgment interest to the Simons. For the reasons that follow, the judgment of the trial court will be affirmed.

## I.     Facts and Procedural History

{¶ 2} In 2016, Nicolette Simon ("Mrs. Simon") started noticing blood in her stool during bowel movements and, after consulting with her doctor, decided to undergo a colonoscopy. During the procedure, the physician noticed a few polyps on her colon; while he was able to remove some of them, there was one that could not be removed in that setting. Before finishing the procedure, the doctor marked, or "tattooed," the area close to the remaining polyp so it could be located at a later date.

{¶ 3} To address the remaining polyp, Mrs. Simon was referred to Dr. Patrick Larreategui, a board-certified general surgeon who frequently performs colorectal and abdominal surgeries. Based on the way the polyp was attached to the colon wall (its base was described as "carpet-like"), Mrs. Simon, in consultation with her doctors and husband, decided a colon resection surgery was the best option. The plan for the procedure was that Dr. Larreategui would make an incision above and below the polyp to remove that section of colon and then rejoin the remaining sections. The Simons were told that the procedure would last a couple of hours and then would require a three-to-

five-day post-operative hospital stay to recover.

{¶ 4} The surgery commenced on the morning of December 16, 2016. Dr. Larreategui led the surgical team which included, among others, Erica Penrod, a physician's assistant, and Jamie Myers, a surgical technician. Cameron Bernadsky, an Ethicon representative, was an observer in the operating room as well, although he took no part in the surgery. According to the testimony, Dr. Larreategui's plan was to perform a hand-assisted laparoscopic surgery. He made a small incision just below Mrs. Simon's belly button to give access to the abdominal cavity and then inserted a small camera to look for the "tattooed" section of colon. Unfortunately, Dr. Larreategui and his team could not find the "tattoo" with just the camera, so Penrod deployed a proctoscope which ultimately located the tattoo. When the polyp was found, it was in an area of the abdomen much lower than expected, and Dr. Larreategui could not access it in a minimally-invasive way. This necessitated the conversion of the surgery from minimally invasive to open, and the small incision was extended to allow for better access to the anatomy.

{¶ 5} Testimony indicated that due to the nature of Mrs. Simon's anatomy, the targeted area was extremely difficult to get to, and once Dr. Larreategui was able to access the section of colon with the polyp, things got even more difficult.

{¶ 6} To effectuate the transection and then resection of the colon, Dr. Larreategui used the Ethicon Contour Curved Cutter Stapler. According to Ethicon, the device both cuts and staples. When actuated, a knife comes down the middle of the device and transects the colon or rectum, then the stapler forms two lines of staples on either side of the cut. Appellant's Brief at 4-5; Trial Tr. Day 7 (Vol. I), p. 60, 132, 143, 146. There was

testimony that if the instructions for use (IFU) were followed, there was no chance of the stapler failing to make a cut and the staple lines. Trial Tr. Day 7, p. 226-227. In this case, however, the stapler malfunctioned (although it is vigorously debated how and why), and while it cut the tissue, it did not form the lines of staples as intended.

{¶ 7} After the stapler malfunction, Dr. Larreategui attempted to reconnect the rectal stump to the sigmoid colon (the section of the colon where the polyp was located), but leakage was discovered. The occurrence of leakage was significant because feces seeping into the abdominal cavity could be fatal. Unable to reconnect the colon to the rectal stump, the decision was made to create a stoma (a hole) in Mrs. Simon's abdomen, pull the sigmoid colon through the stoma, and attach a colostomy bag.

{¶ 8} Following the cut and staple misfire, Bernadsky, Ethicon's representative in the operating room, reported the situation to the company. He then took possession of the stapler used in Mrs. Simon's surgery and immediately shipped it to Ethicon's manufacturing facility in Juarez, Mexico, to be examined by product engineers there.

{¶ 9} The surgery, which was expected to take only a few hours, lasted much longer, and created a difficult, painful recovery for Mrs. Simon. In fact, after further complications from the initial operation, another surgery was performed by Dr. Larreategui to remove the entire sigmoid colon. As a result, a new stoma was created, higher up in her abdomen.

{¶ 10} Mrs. Simon spent 30 days in the hospital recovering from the two surgeries performed by Dr. Larreategui. After a brief stint at home, she was readmitted into the hospital with further complications. Due to the complexity of Mrs. Simon's continued

issues, she was referred to a specialist at the Cleveland Clinic, where she underwent two additional surgeries. During the first procedure, it was discovered that her transverse colon was compromised. That portion of her bowel was removed, leaving her without multiple sections of her colon. In addition, testing prior to her second scheduled Cleveland Clinic surgery revealed a rectovaginal fistula - a leak from the colon that deposits waste into the vaginal cavity.

{¶ 11} Because most of her colon was removed, Mrs. Simon now has an ileostomy bag (the ileum is part of the small intestine) to collect her body's solid waste products. The bag must be emptied approximately every three hours, including during the night, and her condition has put an incredible strain on almost every aspect of Mrs. Simon's life.

{¶ 12} On November 16, 2018, the Simons filed their initial complaint – as a medical malpractice action – against Dr. Larreategui, Upper Valley Medical Center, and UVPC Specialists, Inc. A few weeks later, the complaint was amended to include product liability claims against Ethicon. Eventually, however, claims against ancillary parties were dismissed, and only Dr. Larreategui and Ethicon remained as defendants.

{¶ 13} On March 17, 2020, after over a year of depositions and motion practice, Ethicon moved for summary judgment. While the trial court denied Ethicon's motion, the Simons abandoned all theories against it except manufacturing defects.

{¶ 14} Finally, on March 16, 2021, more than five years after Mrs. Simon's initial surgery, the case went to trial. The eight-day trial saw the presentation of testimony from, among others, Mr. and Mrs. Simon, Dr. Larreategui, the engineer who invented the Ethicon stapler, and other experts (both surgeons and engineers). The jury also

considered thousands of pages of exhibits. The court ruled on multiple Ethicon motions for directed verdicts, all of which were denied.

{¶ 15} Ultimately, the jury made two separate findings that are pertinent to this appeal. First, it found that Dr. Larreategui had not been negligent. Then the jury unanimously concluded that it was Ethicon's stapler that had caused Mrs. Simon's injuries; it awarded damages for Mrs. Simon in the amount of $9,314,174.50 and for Mr. Simon in the amount of $1,000,000. Collectively, Ethicon was liable for $10,314,174.50 in damages. The trial court denied Ethicon's motion for judgment notwithstanding the verdict (JNOV), and, after briefing and a separate hearing, it awarded the Simons $311,975.11 in prejudgment interest.

{¶ 16} Ethicon appeals, raising three assignments of error which challenge the trial court's decision not to grant its JNOV motion, the trial court's decision to allow certain testimony, and the prejudgment interest award.

## II.     Judgment Notwithstanding The Verdict

{¶ 17} In its first assignment of error, Ethicon contends that the trial court erred by failing to grant its JNOV motion. Its principal argument is that the Simons failed to establish a manufacturing defect claim. We disagree.

{¶ 18} The Ohio Supreme Court has confirmed that the standard for a judgment notwithstanding the verdict is the same as that of a directed verdict. *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 435, 659 N.E.2d 1232 (1996). "A directed verdict is proper if, construing the evidence most strongly in favor of the non-moving party, the trial court 'finds that upon any determinative issue reasonable minds

could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party.' " *Mancz v. McHenry*, 2d Dist. Greene No. 2019-CA-74, 2021-Ohio-82, ¶ 44, quoting Civ.R. 50(A)(4).

{¶ 19} The test "requires the court to discern only whether there exists any evidence of substantive probative value that favors the position of the nonmoving party." *Goodyear Tire Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶ 3. Put a different way, a reviewing court must affirm the trial court's denial of a motion for directed verdict if there is *any* evidence that supports the non-moving party's claim.

{¶ 20} Because motions for directed verdicts (and likewise, JNOV motions) test the legal sufficiency of the evidence, not its weight or witness credibility, our review of the trial court's judgment is de novo. *Schafer v. RMS Realty*, 138 Ohio App.3d 244, 257, 741 N.E.2d 155 (2d Dist.2000).

Manufacturing Defect

{¶ 21} Ethicon's assignment of error asserts that the Simons failed to establish that there was a manufacturing defect in the stapler used in Mrs. Simon's surgery. According to R.C. 2307.73, a manufacturer is subject to liability if a claimant establishes all of the following: (1) the product in question was defective in manufacture or construction; (2) a defective aspect of the manufacturer's product was a proximate cause of harm for which the claimant seeks to recover; and (3) the manufacturer produced, constructed, created, assembled, or rebuilt the actual product that was the cause of harm for which the claimant seeks to recover. R.C. 2307.73(A)(1)-(3).

{¶ 22} "A product is defective in manufacture or construction if, when it left the control of its manufacturer, it deviated in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards." R.C. 2307.74.

{¶ 23} Ethicon first argues that the Simons have no direct evidence of a specific defect in the stapler, a point that is at odds with the views of both the Simons and the trial court. The Simons argue that there was direct evidence of the defect in the form of testimony from Dr. Larreategui, Erica Penrod (physician's assistant), and Jamie Myers (surgical tech) that despite following all the IFUs, the Ethicon Contour Stapler malfunctioned: it cut, but it did not staple. The jury heard testimony from Anthony Nguyen, an Ethicon witness (and creator of the device), that if the IFUs were followed, the stapler would always cut and staple. Trial Tr. Day 7, p. 226-227. Similar testimony was given by Bernadsky. Trial Tr. Day 3, p. 43. The medical professionals' testimony was direct evidence that the device had deviated in a material way from the performance standards articulated by Nguyen and Bernadsky, an element that a plaintiff must prove. However, we do not believe that this evidence resolved the entire equation; it did not prove that the product was defective when it left the control of the manufacturer. To demonstrate that element, in the absence of direct evidence, the Simons turned to circumstantial evidence, something that Ethicon argues was foreclosed in the present situation. With the differing opinions from the parties, we turn to the statute for guidance.

{¶ 24} R.C. 2307.73(B) states:

If a claimant is unable because the manufacturer's product in question was destroyed to establish by direct evidence that the manufacturer's product in question was defective or if a claimant otherwise is unable to establish by direct evidence that the manufacturer's product in question was defective, then, consistent with the Rules of Evidence, it shall be sufficient for the claimant to present circumstantial or other competent evidence that establishes, by a preponderance of the evidence, that the manufacturer's product in question was defective[.]

Ohio courts have weighed in on the issue as well. In *State Farm Fire & Cas. Co. v. Chrysler Corp.*, 37 Ohio St.3d 1, 6, 523 N.E.2d 489 (1988), the Ohio Supreme Court stated that "[p]roduct defects may be proven by direct or circumstantial evidence." The Eighth District Court of Appeals has held that "a product liability case can be proven by demonstrating the existence of a defect by circumstantial evidence." *Colboch v. Uniroyal Tire Co., Inc.*, 108 Ohio App.3d 448, 458, 670 N.E.2d 1366 (8th Dist.1996).

{¶ 25} Here, we find that the stapler in question was effectively destroyed, allowing proof by circumstantial evidence. Nguyen, Ethicon's expert, testified that before he had a chance to examine the stapler, it was broken into pieces in Mexico, so there was no attempt made to test the actual device. Trial Tr. Day 7, p. 209, 211. Pictures presented at trial showed the stapler used in Mrs. Simon's surgery in pieces, making it impossible for anyone to recreate the event. Therefore, it was appropriate for the jury to consider circumstantial evidence that the stapler had been defective when it left the Ethicon's control.

{¶ 26} At trial, this circumstantial evidence came in the form of testimony from Dr. Larreategui and Penrod. When it was time to use the stapler to transect Mrs. Simon's colon, the single-use device was removed from a sealed, sterile package and was inspected, with no damage found. Trial Tr. Day 5, p. 135. Dr. Larreategui then testified, in extreme detail, that he meticulously followed all the IFUs, but this time, unlike the 200 or so times he had used the product before, the device cut but did not staple. Trial Tr. Day 2, p. 26-121, 134-154. Similarly, Penrod told the jury that she had seen the stapler used hundreds of times and had never seen it fail to form staple lines as it did in Mrs. Simon's case. Trial Tr. Day 5, p. 92. Based on this testimony, a fact finder could have reasonably concluded that the Ethicon stapler had been defective when it left the control of the manufacturer – it was opened from a sealed packaged, had not been tampered with, and did not work as anyone had previously experienced. *See Erie Ins. Co. v. Sunbeam Prods., Inc.*, S.D. Ohio No. 2:12-cv-00703, 2015 WL 127894, *12 (Jan. 8, 2015) ("[A]bsent substantial change in the condition in which the product was sold, it may be inferred that the defect was present when it left the hands of the manufacturer; this can be established by demonstrating that the product was not tampered with."); *Potts v. Hawkes Hosp. of Mt. Carmel*, 10th Dist. Franklin No. 86AP-1146, 1987 WL 11949, *12 (June 2, 1987) ("[T]he record contains no evidence of any alteration or modification of the machine once it left appellee's control. Accordingly, one may infer that any defect in the machine which existed during its use on appellant likewise existed upon the machine's leaving appellee's control."). That same testimony served as circumstantial evidence that the stapler deviated from its performance standards. Further, Dr. Larreategui's and

Penrod's testimony that they had used the device hundreds of times before with no problems could have led a reasonable juror to conclude that the Ethicon stapler here deviated in a material way from otherwise identical units, an additional route the statute provides to prove a manufacturer defect.

{¶ 27} Ethicon, however, argues that no reasonable juror could have concluded that there was a manufacturing defect in the stapler because there was evidence presented that the problem with the stapler could have been caused by user error on the part of Dr. Larreategui, specifically that the "retaining pin" was not in the "anvil" when the device was fired. Ethicon first points to the testimony of Dr. William Schirmer (the Simons' expert) who posited that he was "more concerned about the possibility the stapler wasn't properly utilized than [he] was about the stapler malfunction." Trial Tr. Day 3, p. 42. He went on to testify: "[I]f I had to go fifty-one percent/forty-nine percent, I would have to lean towards that scenario, as maybe it was not properly utilized, rather than a malfunction." Trial Tr. Day 3, p. 42.

{¶ 28} Ethicon also relies heavily on the hypotheses of its expert, Nguyen, who concluded that (1) Dr. Larreategui had trouble closing the device; (2) Dr. Larreategui did not manually advance the pin into the anvil; and (3) the pin was not in the anvil (hole) when the stapler was fired. Trial Tr. Day 7, p. 216, 219-220. *See also* Brian Davis testimony, Trial Tr. Day 6, p. 59-60, 67. While the factfinder was entitled to believe this theory, it was directly contradicted by the testimony of Dr. Larreategui, Penrod, and Myers, which the jury apparently believed. Additionally, when other expert witnesses attempted to recreate Nguyen's theory of the malfunction, they were unable to do so

because they could not generate enough force on the device. And when Nguyen demonstrated to the jury how he could operate the stapler in a way that would attain the results required for his theory, Dr. Larreategui testified on rebuttal that no surgeon would operate the stapler in that way. The jury was entitled to credit Dr. Larreategui's testimony.

{¶ 29} Penrod testified that Dr. Larreategui manually inserted the pin into the hole, as he always does, and did not have to use any unusual force to close or fire the stapler. Trial Tr. Day 5, p. 89. Myers similarly testified that she did not recall the doctor having any trouble or using excessive force to get the stapler to fire. Trial Tr. Day 5, p. 71. Dr. Larreategui testified that he manually advanced the pin after placing the "jaws" of the device across Mrs. Simon's colon and then observed that the pin was in the anvil. Trial Tr. Day 2, p. 91-92, 93, 100, 108, 143. In addition to visualizing the pin in the hole, Dr. Larreategui testified that he heard an audible "click," indicating its proper position. Trial Tr. Day 2, p. 102, 143. He also told the jury that he had experienced no trouble closing the device and had not forced the trigger closed. Trial Tr. Day 5, p. 108-109, 136; Trial Tr. Day 2, p. 153.

{¶ 30} In addition to the testimony from the medical professionals in the operating room, who all stated that Dr. Larreategui followed the IFUs, every expert witness testified that if Dr. Larreategui was to be believed, and the directions were followed, then the Ethicon stapler did not meet its performance standards. The following exchanges at trial illustrate this point.

Q: If Dr. Larreategui is telling the truth, * * * then would you agree that the stapler deviated from expected performance and standard, based on what

Dr. Larreategui said?

A: Yes.

Q: All right. And if what Dr. Larreategui said is true, what would our expectations be for how the device would perform?

A: I would expect it to apply two rows of staples to either side of the knife cut between the two pieces of bowel.

Testimony of Dr. Eric Haas, Trial Tr. Day 3, p. 119-120.

Q: If we take Dr. Larreategui's testimony at face value, we assume that it's true and that it's accurate, * * * would you agree that the contour stapler deviated from what Dr. Larreategui and other surgeons would expect that stapler to do from a performance standard?

A: Yes.

Testimony of Dr. Jonathan Snyder, Trial Tr. Day 3, p. 95.

{¶ 31} To be sure, Ethicon presented experts who discounted Dr. Larreategui's version of events, stating generally that the physical evidence pointed to misuse by the surgeon, but it is not our province to put our finger on the scale one way or the other. Based on the testimony and evidence presented at trial and discussed above, we conclude that there was at least *some* evidence of substantive probative value that favored the position of the Simons and which allowed a reasonable juror to find for them on the question of whether the Ethicon stapler had been defective in manufacture.

Causation

{¶ 32} The second prong of the test found in R.C. 2307.73(A)(2) states that a

plaintiff must also prove that "a defective aspect of the manufacturer's product * * * was a proximate cause of harm for which the claimant seeks to recover[.]" Proximate cause is defined as a cause that "directly produces an event and without which the event would not have occurred." *Black's Law Dictionary* (11th ed. 2019). It is usually a question of fact in the exclusive province of the jury. *Rieger v. Giant Eagle, Inc.* 157 Ohio St.3d 512, 2019-Ohio-3745, 138 N.E.3d 1121, ¶ 11; *Wade v. Diamant Boart, Inc.*, 179 Fed.Appx. 352, 358 (6th Cir.2006). Applying that definition to this case, the Simons had to demonstrate that without the alleged defect in the stapler, Mrs. Simon's injuries would not have happened.

{¶ 33} The jury heard testimony from Dr. Larreategui that if the Ethicon stapler had cut *and* stapled, Mrs. Simon would not have had the complications she has faced; specifically, the surgery would have been completed as planned and she would still have her sigmoid colon, transverse colon, and rectum. Trial Tr. Day 2, p. 186-187. Dr. Snyder similarly testified that if Dr. Larreategui's testimony were true, then the contour stapler malfunction was the proximate cause of Mrs. Simon's injuries. Trial Tr. Day 3, p. 102-103.

{¶ 34} "Judgment is warranted as a matter of law only where there is a complete absence of evidence which might give rise to a reasonable inference that the defective condition was the proximate cause of plaintiff's injuries." *Fogle v. Cessna Aircraft Co.*, 10th Dist. Franklin No. 90AP-977, 1992 WL 10272, *7 (Jan. 16, 1992). Based on the presented evidence, a reasonable juror could have concluded that the purportedly defective Ethicon stapler was the proximate cause of harm to Mrs. Simon.

<u>The manufacturer produced the actual product that caused the harm</u>

{¶ 35} The third and final prong of the test requires a claimant prove that the

manufacturer produced, constructed, created, assembled, or rebuilt the actual product that caused the harm. R.C. 2307.73(A)(3). In this case, there is no debate that an Ethicon Contour Stapler was used in Mrs. Simon's surgery. This prong was met.

Summary

{¶ 36} The Simons presented evidence sufficient for a reasonable juror to conclude that the Ethicon stapler was defective in manufacture, that a defective aspect of the product was a proximate cause of Mrs. Simon's injuries, and that Ethicon produced the stapler that was the cause of harm. The first assignment of error is overruled.

## III. Witness Testimony

{¶ 37} In its second assignment of error, Ethicon argues that the trial court erred by allowing surgeon-witnesses to testify "whether the stapler had an unspecified manufacturing defect." Appellant's Brief at 21. It believes that only an engineer should have been able to testify about the proper performance of the stapler and that the remedy for the alleged error is a new trial. The Simons counter that the surgeons should not have to be engineers to explain to the jury how a stapler, a device they had used hundreds of times in the past, should perform if used properly. They also claim that Ethicon failed to object to much of the testimony.

{¶ 38} Initially, it is important to note that this issue started as a motion in limine, filed by Ethicon, to exclude the testimony of the doctors as to this topic. "As a general rule, the grant or denial of a motion in limine is not a definitive ruling on the evidence," *State v. Grubb*, 28 Ohio St.3d 199, 200-201, 503 N.E.2d 142 (1986), and objections to the introduction of testimony must be made at trial to preserve evidentiary rulings for

appellate review. *Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, 816 N.E.2d 1049, ¶ 34.

**{¶ 39}** Normally, evidentiary issues, such as witness testimony and even whether a witness can testify as an expert, are "committed to the sound discretion of the trial court. Evid.R. 104(A). The court's determination will be reversed only for an abuse of discretion." *Clay v. Coffield*, 2d Dist. Montgomery No. 15025, 1995 WL 783663, *3 (Dec. 29, 1995). To constitute an abuse of discretion, a trial court's action must be arbitrary, unreasonable, or unconscionable. *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 232, 466 N.E.2d 875 (1984).

**{¶ 40}** In this case, the Simons correctly point out that there were many occasions where a surgeon was asked about the expected performance of the Ethicon stapler and no objection was asserted. That fact is important as this assignment of error is couched in the realm of motions in limine, and thus, the potential error must have been objected to at trial to be considered on appeal. *See Witzmann v. Adam*, 2d Dist. Montgomery No. 23352, 2011-Ohio-379, ¶ 25 (a ruling on a motion in limine does not preserve the record for appeal); 89 Ohio Jurisprudence 3d, Trial, Section 143 (2022) ("Failure to object to evidence at the trial constitutes a waiver of any challenge.").

**{¶ 41}** Therefore, "when a party files a motion in limine regarding the exclusion of evidence but fails to timely object at trial, this court will review the admission of such evidence under a plain error analysis." *State v. Laghaoui*, 2018-Ohio-2261, 114 N.E.3d 249, ¶ 42 (12th Dist.). However, a party must raise and address the issue of plain error on appeal. Ethicon has not done so, and as such, we will only consider the three instances

that have been brought to our attention to which objections were made. *See State v. Greathouse*, 2017-Ohio-6870, 94 N.E.3d 1083, ¶ 21 (9th Dist.) (declining to sua sponte fashion a plain error argument when a party failed to raise one in its brief); *State v. Hairston*, 9th Dist. Lorain No. 05CA008768, 2006-Ohio-4925, ¶ 11 ("Accordingly, as Appellant failed to develop his plain error argument, we do not reach the merits and decline to address [it].").

{¶ 42} In the first instance, Dr. Larreategui was asked if he thought the device, which cut, but did not staple, "performed in an unsafe and unexpected manner." Trial Tr. Day 2, p. 140. Ethicon's trial attorney objected before the doctor could answer but was overruled by the court. The question posed to Dr. Larreategui had only a very limited nexus to engineering or biomechanics. He could answer that question simply based on his experience as a surgeon and experience with the device. An engineering degree was not required to answer the question. The trial court did not err in overruling Ethicon's objection.

{¶ 43} In the next scenario, Dr. Schirmer was asked, assuming Dr. Larreategui was accurate in his testimony that the stapler cut but did not staple, "would that be a result that has been different from the result you have gotten, the performance standards you have gotten with that identical stapler on hundreds of occasions?" Trial Tr. Day 4, p. 29-30. There was an objection, but like the previous example, this question posed to Dr. Schirmer did not call for any engineering or biomechanical expertise. He was able to answer it simply by relating his experience as a surgeon using the device. The trial court did not err in overruling the objection.

{¶ 44} In the final example offered by Ethicon, Dr. Snyder was asked, after a similar line of predicate questions, "would you expect that if a reasonable surgeon followed those Instructions for Use, that the performance standard they would get would be a cut with four staple lines?" There was an objection; once again, though, the question called for an answer based on experience with the instrument (Dr. Snyder testified that he had used the stapler since 2007), not a technical, engineering-based theory. The trial court did not err.

{¶ 45} Based on the record before us, we cannot say that the trial court abused its discretion. Ethicon's second assignment of error is overruled.

### IV. Prejudgment Interest

{¶ 46} In its third and final assignment of error, Ethicon asserts that the trial court erred by awarding the Simons prejudgment interest.

{¶ 47} To award prejudgment interest in a tort action, R.C. 1343.03(C)(1)(c)(ii) requires that: (1) the party seeking prejudgment interest file a motion with the court within the proper time frame; (2) the trial court hold a hearing on the matter; (3) the court find the non-moving party failed to make a good faith effort to settle; and (4) the court find that the party owed the judgment did not fail to make a good faith effort to settle.

{¶ 48} "The purpose of R.C. 1343.03(C) is to encourage litigants to make good faith efforts to settle their cases, thereby conserving legal resources and promoting judicial economy." *Peyko v. Frederick*, 25 Ohio St.3d 164, 167, 495 N.E.2d 918 (1986). It is also to keep parties who have engaged in tortious behavior "from frivolously delaying the ultimate resolution of cases[.]" *Kalain v. Smith*, 25 Ohio St.3d 157, 159, 495 N.E.2d

572 (1996). If a party meets the four requirements found in the statute, the decision to award prejudgment interest is not discretionary. *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 658, 635 N.E.2d 331 (1994). We review the court's decision for an abuse of discretion. *Id.*

{¶ 49} In this case, the parties dispute whether Ethicon made a good faith effort to settle. The Ohio Supreme Court has explained what it means to act in good faith in accordance with R.C. 1343.03, holding: "A party has not 'failed to make a good faith effort to settle' under R.C. 1343.03(c) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risk and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party." *Kalain* at syllabus.

{¶ 50} The Simons argue that Ethicon failed to meet two of the elements. First, they assert that Ethicon did not make a good faith monetary settlement offer or respond to one of theirs. This position is supported by a series of "settlement reports" filed in the trial court prior to trial and testimony at the hearing. The January 25, 2021 report shows that the Simons made a settlement offer of $1,500,000, but it does not appear from the record that Ethicon responded. In fact, in its memorandum in opposition to prejudgment interest filed in the trial court, Ethicon admitted that the Simons had made a "global settlement demand" to all the defendants (Dr. Larreategui and Ethicon), but it claimed that they "never once made an individual settlement demand of Ethicon." Memo in Opposition at 7. That argument is unavailing – a settlement demand had been made.

{¶ 51} The Simons also contend that Ethicon failed to rationally evaluate its risk

and potential liability as evinced by the company's lack of a settlement offer. They argue that there were only a limited number of outcomes possible at the trial (with many of them ending in liability for Ethicon), so the company could not have had a good faith belief that it faced no liability. For instance, it is argued that Ethicon should have known that if the jury believed Dr. Larreategui's position that he followed the instructions and the stapler nevertheless misfired, the only remaining outcomes, logically, were full or partial liability for Ethicon.

{¶ 52} Ethicon, however, argues that it "maintained a very viable defense to the one and only claim asserted against it," and furthermore that a defendant has no duty to make a settlement offer if there is a good faith belief that it has no liability. *See Baker v. Cleveland*, 8th Dist. Cuyahoga No. 93952, 2020-Ohio-5588, ¶ 59; *Evans v. Dayton Power & Light Co.*, 4th Dist. Adams No. 05CA800, 2006-Ohio-319, ¶ 12.

{¶ 53} While Ethicon's position here is plausible, the trial court did not believe it was a winning argument and expressed that sentiment in its well-reasoned, eight-page decision granting prejudgment interest to the Simons. The trial court did not abuse its discretion as the decision was not arbitrary, unreasonable, or unconscionable. Ethicon's third assignment of error is overruled.

## V. Conclusion

{¶ 54} Having found no errors on the part of the trial court, its judgment will be affirmed.

. . . . . . . . . . . .

WELBAUM, J. and LEWIS, J., concur.


Copies sent to:

Todd B. Naylor
Marc G. Pera
John D. Holschuh, Jr.
Benjamin C. Sasse
Susan M. Audey
Elisabeth A. Arko
Michael P. Foley
Jeffrey M. Hines
James J. Englert
Hon. Jeannine M. Pratt